24-1111 Chang-Kyu Oh v. HYS Livery Service I want to thank you both for your patience today. Thank you so much. Good afternoon, your honors. May it please the court. My name is Aparna Pujar and I represent the appellants Chang-Kyu Oh and Jun-Yang Oh. Your honor, this case is about district court not viewing facts and evidence in the light most favorable to the plaintiff, which is the standard for summary judgment, and also disregarding material issues of fact. The district court acknowledged that the plaintiff suffered permanent consequential and significant limitation of injuries. However, the court decided that the plaintiff could not satisfy that the cause of those injuries was the accident, your honor. Okay, so the accident involved a rear-end, right? Yes, your honor. Was your client able to drive the car after the accident? Your honor, he was on his way to work. After the accident, my question is, after the accident, was he able to drive the car? Your honor, he was able to. Before that, an ambulance and the police were present at the scene and thereafter he went to work, your honor, and he started feeling dizzy while at work. He went back home and only the next day did he seek any medical attention. Did the seatbelt, I mean the airbag, didn't deploy? No, your honor. So can you point to me the clearest explanation or indicate where you believe your experts offered their clearest explanation as to their conclusion on causation? Your honor, I would just like to make a point. The fact that the burden should have never shifted on the plaintiff to show causation. I'll come to that again, but I had four, I had three treating doctors saying- Why don't you jump back and then do it in order? So you're saying that they never made their burden to show lack of proximate causation. Yes, your honor. Tell me why, because they offered evidence and so why was what they offered to rebut and put the burden back on you to show proximate causation? Why wasn't that enough? Your honor, because the law says that they need to affirmatively make sure that none of these injuries or none of the issues and none of the limitations were caused by the accident. Dr. Kipnis, which is defendant's medical expert, he never said that the right shoulder injuries were not caused by the accident. With respect to all other injuries, your honor, with respect to lumbar injuries, with respect to cervical injury, with respect to left shoulder injuries, he specifically states that these injuries were not caused by the accident, but he completely misses out with respect to right shoulder. I'm sorry, the right shoulder? Yes, your honor, the right shoulder. And your honor, this is where the burden cannot shift. Only once the defendant has satisfied that all these, all the injuries that are being claimed by the plaintiff are not caused by the the right shoulder exam was normal, so there wouldn't have been any reason to consider whether the residual deficits resulted from the car accident because he didn't find any residual deficits. Am I misunderstanding that? Your honor, firstly, Dr. Kipnis never took into consideration that he received injections on the right shoulder. That is nowhere in the part in his analysis. Secondly, Dr. Ruby Kim, who gave those injections to a plaintiff, she also noted that he has certain limitations on his right shoulder. Again, none of this was analyzed by Dr. Kipnis. This was not taken into consideration. And she said that those limitations correspond to the images. And he again did not take that into consideration. And your honor, it is a requirement of law that you need to negate each and every injury. So the doctor here is specifically using the language that this was not caused by the accident with respect to each and every injury except the right shoulder injury. So if we agree with you, we're just talking about the right shoulder. Is that basically what you're saying now? Yes, your honor. Okay, so in your claim, he injured the right shoulder, got a serious injury to the right shoulder as a consequence of getting an injury. Yes, your honor. Okay. And then after the serious injury to the right shoulder, as a consequence of getting an injury, and there was medical attention right there, he didn't seek medical attention there. He went to work, did his work, presumably, then went home. And the next day or later on, sought medical treatment for the shoulder. Right? Yes, your honor. But that helped me understand what I'm missing, because that's not the usual response to a serious injury in an auto accident. Right, your honor. It's a traumatic accident. You feel pain, you feel you have pain and you're suffering. Right. Your client has none of those things. It goes about his business. Right, your honor. Sometimes there is a delayed feeling of uncomfort and delayed joint issues. And this was just a matter of a few hours, your honor. It was right when he was at work, he started feeling dizzy, and then he went home, he took Tylenol, he thought he'll be okay. And other than that, defendant's expert himself, when he talks about history... Okay, so when did he seek medical attention for the serious injury he discovered, he experienced during the auto accident? Your honor, sorry, I missed... When did he first seek medical attention? The next day, your honor. The next day he went... And additionally, your honor, defendant's expert, Dr. Kipnis, in his history of my client's illnesses, he in fact writes that it's unremarkable, which basically shows that he's had no issues. It is defendant's expert. I just didn't understand. He's written unremarkable, which is unremarkable. It was unremarkable? Yes. So which basically means that he's had none of these issues before this accident. And this was not even taken into consideration by the district court. The district court completely ignored the fact that Dr. Kipnis' report, although he later says that he's had the onset of these injuries and because he's a 42-year-old man, but this was completely ignored. The fact that he said that in the history, that his history was unremarkable. So your honor, the fact that the burden never shifted on plaintiff, so it should have stopped there and they should not have gotten summary judgment. You know, even if the burden shifted on plaintiff, your honor, we not only have an expert, we have four treating doctors who wrote in their report that these injuries were caused by the accident. It's not just somebody who we paid for an expert and he gave an opinion. These are actual treating doctors, one of whom is the one who performed surgery on my client. So these are actual treating doctors. So the standard is not the same for treating doctors. These treating doctors have through all the MRI reports, all ROM data with the plaintiff. And your honor, the district court refers to Flores case to say that the reports by our doctors are not non-conclusive, but your honor, we can easily distinguish that case from our case. In that case, your honor, the plaintiff had a expert doctor who said that this accident did not cause these injuries. Secondly, that doctor was not sure whether these ROMs were passive ROMs or active ROMs. And they didn't even look over the images. I think unless my colleagues have questions, we're going to get to hear from you again on rebuttal. So maybe we'll go ahead and hear from your friend on the other side. Good afternoon, your honors. James Strauss on behalf of defendants and appellees. Quick synopsis. Mr. O claims he has injuries to his cervical back, lumbar back, right shoulder, left shoulder. To that point, your honor, in November of 2021, Dr. Kipnis performed an independent medical exam of Mr. O. And I point that's in my appendix AA1 to AA12. At page AA3 of Dr. Kipnis' report, he says that Mr. O came to him and said, all my issues have been resolved except for my left shoulder. That's what he says. Except for his left shoulder, right. Except his right shoulder is fine, his back is fine. That's what he said. And how long after the accident? That was in 27 months post-accident when he came for his IM. So does that go to the permanent serious injury issue more than the causation? Precisely. The point is that we're here arguing about whether or not he had a permanent consequential limitation. Well, didn't the district court actually rule for the plaintiff on that question and rule in your favor on causation? Ruled on the plaintiff for left shoulder as a serious injury, but said there was no causation for the left shoulder. Okay. But for the right shoulder and for the back, she didn't say those were serious injuries based on Dr. Kipnis' report and Dr. Lewis' report. Did the district court address that question at all? Which question? The right shoulder and the cervical spine? Oh, absolutely. Certainly. Did she reach a conclusion as to whether there was sufficient evidence to create a dispute of fact? No. We met our burden with Dr. Lewis' report and Dr. Kipnis' report. And the burden went to plaintiff. The answer to plaintiff's response was three conclusory statements from her experts, Dr. Villapanta, Dr. Pianta, Dr. Kael, and Dr. McMahon. One of her docs, Dr. McMahon, and it was very shortly after the accident. And I grant you, it only related to the lumbar spine injury. But he looks at the MRIs. He sees that there's disc bulges. He knows by history that there's no history of prior low back pain and reasonably concludes that the accident was either a cause or an aggravation of whatever underlying back pathology he had. Why isn't that a sufficient opinion on causation to at least create a dispute of fact relative to the lumbar spine? The answer to that is because that a 43-year-old person, it's not unusual to have disc... Yeah, it's not. But if you don't have it and then you have an accident and then a week later you have it for the first time, that would be a pretty strong indicator of causality. It would be reasonable for a physician to draw that inference, I would think. Okay. Perhaps he can. But I will say to you that case law holds otherwise. New York case law, and in fact, the decision by this court, Young-Sung Lee v. Garvey, says that herniations and bulging discs are not serious injuries unless they are also met with the objective evidence of physical limitations resulting from that injury. So, and again, we're bleeding and it may be that they can't be separated, the causation question from the permanent serious injury question. Correct. I think you're now responding, essentially, there's no sufficient evidence to create a dispute of fact as to whether there's a permanent serious injury relative to the low back. Absolutely correct. And the reason that I say there's no physical limitation here is because Mr. O continued to work for three straight years after his accident occurred. Indeed, now we're getting towards the 9180 issue where Justice Kovner talked about the fact that he couldn't do some chores and he really couldn't identify any substantial limitations in his daily activities. So when you have herniated discs and bulging discs, generally, New York law says those aren't actual serious injuries unless they are met with, as I said, objective evidence of physical limitations. That's York case here, Second Circuit said it in Young-Sung Lee v. Garvey. We also cite Pommels v. Perez, Court of Appeals case, Turo v. Avis v. Rent-a-Car, all in our briefs. So with respect to that, Your Honor, that's the back injuries. We don't think that they exist. The right shoulder injuries, Dr. Kipnis discusses in his report. I note that he looked at every single person's medical records. He lists them all in his report. It's a very extensive report. And ultimately, that along with Dr. Lewis's biomechanical expert testimony saying that these injuries could not have occurred based on the kinematics of this accident, Mr. O's own testimony that he did not recall any portion of his body hitting anything inside the car. That's at docket number 37-6 at deposition transcript 41, lines 13 to 17. So here, there's really nothing that's major other than his left shoulder. And his left shoulder injury is an injury that wasn't even raised at the accident scene. No x-rays, no nothing. And it wasn't until 14 months... But it's not unusual, right? I mean, it's pretty rare for a soft tissue injury for somebody to experience the pain right on site, isn't it? Well, I'm talking about his left shoulder where he had a surgery, a major surgery on his left shoulder. And that's the one that Judge Kovner said that would be a serious injury if it were causally related. But in this case, it wasn't causally related because he didn't even seek any kind of treatment on his left shoulder until 14 months after the accident. So she, of course, naturally said, if you're not going to get any physical service, physical modifications for your shoulder 14 months after the accident, how could you say that it's causally related to an accident that happened 14 months ago? It doesn't sprout up 14 months later. Your Honors, if you have any questions... I have one. I mean, it seems to me that part of the issue is that we are looking at Dr. Kipnis' statement as to the left shoulder, and the plaintiffs offered nothing specific to the left shoulder. But they do have Dr. McMahon that said, with respect to the injuries, we think that they're related. We think that they're causes of injuries, treatment, surgery, and future surgeries. So can you articulate why that's not at least enough for a dispute of fact? I believe that if you look at Dr. McMahon's ultimate conclusion, he says at docket 38-4, pages 4 to 5, with respect to injuries, my diagnosis is consistent with a serious, long-lasting injury and are consistent with the mechanism of his injuries relating to his vehicle being struck in the rear by defendant's limousine and the damage caused to his vehicle and defendant's vehicle. The reason I raise that is because I point to this Court's decision in Flores v. Bergstrom, where the Court said specifically, conclusory statements like that are not sufficient. In other words, you really have to talk about, if you look at Dr. Kipnis' report, he lists probably a score or two of all the medical records that he looked at. Dr. McMahon's report does not look at all the medical records. Dr. Kipnis' does. And if you look at the Flores v. Bergstrom case, which is a case that we cite in our brief, these conclusory statements saying, which is very common that you might see in these cases, for example, Dr. Pellapianto says, it is within a reasonable degree of medical probability that Chang-Q's right shoulder pain is causally related to the motor vehicle accident that occurred on August 15, 2019. That's just conclusory. And that's what Dr. McMahon's conclusion was as well, similar to that. He did not really articulate anything. I also note that we at least put in a biomechanical report which talked very much about causality. Plaintiffs had every opportunity to put in their own biomechanical to oppose those arguments that are made by Dr. Lewis. Justice Judge Kovner really delved into this case quite extensively. It's a really, in my opinion, a wonderful decision. And I think the Second Circuit has a couple threshold decisions, but not a lot of them. And this is one that really could kind of set the standard for what threshold means in New York in this court. If you have any other questions, I'm happy to take them. Thank you, counsel. Thank you. Thank you. Your Honors, defendant is definitely mistaken when he says that the court did not find there was permanent consequential and significant limitation injuries to the right shoulder, cervical, and lumbar. Your Honors, if you see A104 in plaintiff's appendix, which is part of of the district court, the court literally says, while plaintiff establishes a prima facie case that he suffered permanent consequential or significant limitation injuries to his right shoulder, cervical spine, and lumbar spine, he fails to establish a prima facie case that any of his injuries were approximately caused by the accident. So Your Honor, the only question on this appeal is regarding the causation. Well, I suppose that, although the argument that you're challenging on appeal is causation, since we're reviewing de novo, we could affirm on any basis, and if we concluded that there's no way that the record could support a conclusion of permanent serious injury, as to one or more of the component injuries, we could do that. Right, Your Honor. With respect to herniated discs, like my colleague mentioned, the case says that if there are herniated discs, that alone is not a serious injury, but if you can show range of motion, defects in range of motion, then that becomes a serious injury. And we have shown range of motion issues with Dr. McMahon's report. Your client testified that he didn't recall his shoulder in the course of the accident, right? Your client testified that he didn't recall trauma to his shoulder during the course of the accident, he recalled hitting the accident as a result of the rear-ending, right? No, that's not correct, Your Honor. He did recall that he hurt his shoulders, his back, and his neck. With respect to left shoulder, I agree, Your Honor. With respect to right shoulder, yes, but left shoulder, Your Honor, it is absolutely incorrect that he started getting medication or therapy for his left shoulder only after 14 months, like the Defendant's Counsel said. He in fact started getting acupuncture treatment to his left shoulder within two months, and that is- Two months after the accident? Two months after the accident. Because he was taking Tylenol? He was taking Tylenol, Your Honor, and secondly, the left shoulder injury was a result of the cervical injury. It spread through his left shoulder due to his cervical injury, and that has been noted- As a consequence of the accident? As a consequence- Yes, Your Honor. All right. Well, I think we have your arguments in your brief, so thank you both. We appreciate your arguments. Thank you.